1

FILED ___ ENTERED
___ LODGED ___ RECEIVED

2

**APR 26 2001**

3

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY ___ DEPUTY

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8

9

10   JOHN DOE,

11                           Plaintiff,                    No. C01-453Z

12   v.

                                                           ORDER
13   2THEMART.COM INC.,

14                           Defendant.

15        This matter comes before the Court on the motion of J. Doe (Doe) to proceed under a

16   pseudonym and to quash a subpoena issued by 2TheMart.com (TMRT) to a local internet

17   service provider, Silicon Investor/InfoSpace, Inc. (InfoSpace).  The motion raises important

18   First Amendment issues regarding Doe's right to speak anonymously on the Internet and to

19   proceed in this Court using a pseudonym in order to protect that right.  The Court heard oral

20   argument on the motion and issued an oral ruling on April 19, 2001.  Due to the importance

21   of the constitutional issues raised by this motion, the Court now issues this written order.

22   **FACTUAL BACKGROUND**

23        There is a federal court lawsuit pending in the Central District of California in which

24   the shareholders of TMRT have brought a shareholder derivative class action against the

25   company and its officers and directors alleging fraud on the market.  In that litigation, the

26   defendants have asserted as an affirmative defense that no act or omission by the defendants

ORDER  -1-

1  caused the plaintiffs' injury.  By subpoena, TMRT seeks to obtain the identity of twenty-
2  three speakers who have participated anonymously on Internet message boards operated by
3  InfoSpace.  That subpoena is the subject of the present motion to quash.

4      InfoSpace is a Seattle based Internet company that operates a website called "Silicon
5  Investor."  The Silicon Investor site contains a series of electronic bulletin boards, and some
6  of these bulletin boards are devoted to specific publically traded companies.  InfoSpace users
7  can freely post and exchange messages on these boards.  Many do so using Internet
8  pseudonyms, the often fanciful names that people choose for themselves when interacting on
9  the Internet.  By using a pseudonym, a person who posts or responds to a message on an
10  Internet bulletin board maintains anonymity.

11      One of the Internet bulletin boards on the Silicon Investor website is specifically
12  devoted to TMRT.  According to the brief filed on behalf of J. Doe, "[t]o date, almost 1500
13  messages have been posted on the TMRT board, covering an enormous variety of topics and
14  posters.  Investors and members of the public discuss the latest news about the company,
15  what new businesses it may develop, the strengths and weaknesses of the company's
16  operations, and what its managers and its employees might do better."  See Doe's
17  memorandum, docket no. 2 at 4.  Past messages posted on the site are archived, so any new
18  user can read and print copies of prior postings.

19      Some of the messages posted on the TMRT site have been less than flattering to the
20  company.  In fact, some have been downright nasty.  For example, a user calling himself
21  "Truthseeker" posted a message stating "TMRT is a Ponzi scam that Charles Ponzi would be
22  proud of. . . . The company's CEO, Magliarditi, has defrauded employees in the past.  The
23  company's other large shareholder, Rebeil, defrauded customers in the past."  Another poster
24  named "Cuemaster" indicated that "they were dumped by their accountants ... these guys are
25  friggin liars ... why haven't they told the public this yet???  Liars and criminals!!!!!"  Another
26  user, not identified in the exhibits, wrote "Lying, cheating, thieving, stealing, lowlife

ORDER  -2-

1    criminals!!!!" Other postings advised TMRT investors to sell their stock. "Look out

2    below!!!! This stock has had it ... get short or sell your position now while you still can."

3    "They [TMRT] are not building anything, except extensions on their homes...bail out now."

4         TMRT, the defendant in the California lawsuit, issued the present subpoena to

5    InfoSpace pursuant to Fed.R.Civ.P. 45(a)(2). The subpoena seeks, among other things, "[a]ll

6    identifying information and documents, including, but not limited to, computerized or

7    computer stored records and logs, electronic mail (E-mail), and postings on your online

8    message boards," concerning a list of twenty-three InfoSpace users, including Truthseeker,

9    Cuemaster, and the current J. Doe, who used the pseudonym NoGuano. These users have

10   posted messages on the TMRT bulletin board or have communicated via the Internet with

11   users who have posted such messages. The subpoena would require InfoSpace to disclose

12   the subscriber information for these twenty-three users, thereby stripping them of their

13   Internet anonymity.[1]

14        InfoSpace notified these users by e-mail that it had received the subpoena, and gave

15   them time to file a motion to quash. One such user who used the Internet pseudonym

16   NoGuano now seeks to quash the subpoena.[2]

17        NoGuano alleges that enforcement of the subpoena would violate his or her First

18   Amendment right to speak anonymously. In response to the motion this Court issued a

19   Minute Order directing the interested parties TMRT, InfoSpace, and NoGuano to file

20   _____

21   [1] At oral argument, this Court expressed its concern that this subpoena was overly broad.
     Counsel for TMRT clarified that the only information the defendant was seeking was the identity
22   of the twenty-three listed Internet users. Accordingly, the Court treats this subpoena as if it had
     only requested the identity of the listed individuals.

23   [2] NoGuano has moved anonymously to quash the subpoena. At oral argument, counsel
     for all parties agreed that NoGuano was entitled to appear before this Court anonymously on the
24   motion to quash. When an individual wishes to protect their First Amendment right to speak
     anonymously, he or she must be entitled to vindicate that right without disclosing their identity.
25   Accordingly, this Court grants NoGuano's request to proceed under a pseudonym for the
     purposes of this motion. However, this Court does not hold that a person would be allowed to
26   proceed anonymously in all cases or under any circumstances. The Court need not reach this
     issue in light of the parties' agreement to allow Doe to proceed anonymously before this Court.

ORDER  -3-

1  additional briefing.  All interested parties filed briefing as directed and participated in oral
2  argument.[3]

3  **DISCUSSION**

4       The Internet represents a revolutionary advance in communication technology.  It has
5  been suggested that the Internet may be the "greatest innovation in speech since the invention
6  of the printing press[.]"  See Raymond Shih Ray Ku, Open Internet Access and Freedom of
7  Speech: A First Amendment Catch-22, 75 Tul. L. Rev. 87, 88 (2000).  It allows people from
8  all over the world to exchange ideas and information freely and in "real-time."  Through the
9  use of the Internet, "any person with a phone line can become a town crier with a voice that
10 resonates farther than it could from any soapbox."  Reno v. ACLU, 521 U.S. 844, 870
11 (1997).

12      The rapid growth of Internet communication and Internet commerce has raised novel
13 and complex legal issues and has challenged existing legal doctrine in many areas.  This
14 motion raises important and challenging questions of: (1) what is the scope of an individual's
15 First Amendment right to speak anonymously on the Internet, and (2) what showing must be
16 made by a private party seeking to discover the identity of anonymous Internet users through
17 the enforcement of a civil subpoena?[4]

18      A.    The anonymity of Internet speech is protected by the First Amendment.

19      The right to the freedom of speech is enshrined in the First Amendment to the United
20 States Constitution, which provides that "Congress shall make no law . . . abridging the
21 freedom of speech, or of the press[.]"  U.S. Const. amend. I.  This limitation on governmental
22 interference with free speech applies directly to the federal government, and has been

23 _____

24      [3] Counsel for plaintiffs in the underlying securities litigation appeared at oral argument
   but did not wish to be heard on the motion.

25      [4] Neither the parties nor this Court has found any federal court authority evaluating the
   First Amendment rights of anonymous Internet users in the context of a third-party civil
26 subpoena seeking the identity of those users.  The parties have directed the Court to the few state
   court decisions on this issue.

ORDER  -4-

1 imposed on the states via the Fourteenth Amendment.  See, e.g., First Nat'l Bank v. Bellotti,
2 435 U.S. 765, 779-80 (1978).

3     A court order, even when issued at the request of a private party in a civil lawsuit,
4 constitutes state action and as such is subject to constitutional limitations.  See, e.g., New
5 York Times Co. v. Sullivan, 376 U.S. 254, 265 (1964); Shelley v. Kraemer, 334 U.S. 1
6 (1948).  For this reason, numerous cases have discussed the limitations on the subpoena
7 power when that power is invoked in such a manner that it impacts First Amendment rights.
8 See, e.g., NAACP v. Alabama ex rel. Patterson, 357 U.S. 449, 461 (1958)(discussing the
9 First Amendment implications of a civil subpoena to disclose the membership list for the
10 NAACP); Los Angeles Memorial Coliseum Comm'n v. Nat'l Football League, 89 F.R.D.
11 489 (C.D. Cal. 1981)(discussing the First Amendment implications of a civil subpoena to
12 disclose the names of confidential journalistic sources); Snedigar v. Hoddersen, 114 Wn.2d
13 153 (1990)(discussing the First Amendment implications of a civil subpoena to disclose the
14 meeting minutes of a political association).

15     First Amendment protections extend to speech via the Internet.  "Through the use of
16 web pages, mail exploders and newsgroups, [any person] can become a pamphleteer."  Reno,
17 521 U.S. at 870.  A component of the First Amendment is the right to speak with anonymity.
18 This component of free speech is well established.  See, e.g., Buckley v. American
19 Constitutional Law Found., 525 U.S. 182, 200 (1999)(invalidating, on First Amendment
20 grounds, a Colorado statute that required initiative petition circulators to wear identification
21 badges); McIntyre v. Ohio Elections Comm'n, 514 U.S. 334, 357 (1995)(overturning an
22 Ohio law that prohibited the distribution of campaign literature that did not contain the name
23 and address of the person issuing the literature, holding that "[u]nder our Constitution,
24 anonymous pamphleteering is not a pernicious, fraudulent practice, but an honorable
25 tradition of advocacy and dissent.  Anonymity is a shield from the tyranny of the majority.");
26 Talley v. California, 362 U.S. 60, 65 (1960)(invalidating a California statute prohibiting the

1 distribution of "any handbill in any place under any circumstances" that did not contain the
2 name and address of the person who prepared it, holding that identification and fear of
3 reprisal might deter "perfectly peaceful discussions of public matters of importance.")

4 The right to speak anonymously was of fundamental importance to the establishment
5 of our Constitution. Throughout the revolutionary and early federal period in American
6 history, anonymous speech and the use of pseudonyms were powerful tools of political
7 debate. The Federalist Papers (authored by Madison, Hamilton, and Jay) were written
8 anonymously under the name "Publius." The anti-federalists responded with anonymous
9 articles of their own, authored by "Cato" and "Brutus," among others. See generally
10 McIntyre, 514 U.S. at 341-42. Anonymous speech is a great tradition that is woven into the
11 fabric of this nation's history.

12 The right to speak anonymously extends to speech via the Internet. Internet
13 anonymity facilitates the rich, diverse, and far ranging exchange of ideas. The "ability to
14 speak one's mind" on the Internet "without the burden of the other party knowing all the
15 facts about one's identity can foster open communication and robust debate." Columbia Ins.
16 Co. v. Seescandy.com, 185 F.R.D. 573, 578 (N.D. Cal. 1999). People who have committed
17 no wrongdoing should be free to participate in online forums without fear that their identity
18 will be exposed under the authority of the court. Id.

19 When speech touches on matters of public political life, such as debate over the
20 qualifications of candidates, discussion of governmental or political affairs, discussion of
21 political campaigns, and advocacy of controversial points of view, such speech has been
22 described as the "core" or "essence" of the First Amendment. See McIntyre, 514 U.S. at
23 346-47. Governmental restrictions on such speech are entitled to "exacting scrutiny," and are
24 upheld only where they are "narrowly tailored to serve an overriding state interest." Id. at
25 347. However, even non-core speech is entitled to First Amendment protection. "First
26 Amendment protections are not confined to 'the exposition of ideas[.]'" Id. at 346, citing

1  Winters v. New York, 333 U.S. 507, 510 (1948).  Unlike the speech at issue in Buckley,
2  McIntyre and Talley, the speech here is not entitled to "exacting scrutiny," but to normal
3  strict scrutiny analysis.

4      In support of its subpoena request, TMRT argues that the right to speak anonymously
5  does not create any corresponding right to remain anonymous after speech.  In support of this
6  contention, TMRT cites only to Buckley.  TMRT argues that in Buckley, while the Court
7  struck down a requirement that petition circulators wear identification badges when soliciting
8  signatures, the Court upheld a provision of the same statute that required circulators to
9  execute an identifying affidavit when they submitted the collected signatures to the state for
10  counting.  However, the Court's reasoning in Buckley does not support the contention that
11  there is no First Amendment right to remain anonymous.  It merely establishes that in the
12  context of the submission of initiative petitions to the State, the State's enforcement interest
13  outweighs the circulator's First Amendment protections.  Buckley, 525 U.S. at 200, quoting
14  McIntyre, 514 U.S. at 523 (Ginsberg, J., concurring)("We recognize that a State's
15  enforcement interest might justify a more limited identification requirement.")  The right to
16  speak anonymously is therefore not absolute.  However, this right would be of little practical
17  value if, as TMRT urges, there was no concomitant right to remain anonymous after the
18  speech is concluded.

19      B.    Applicable legal standard.

20      The free exchange of ideas on the Internet is driven in large part by the ability of
21  Internet users to communicate anonymously.  If Internet users could be stripped of that
22  anonymity by a civil subpoena enforced under the liberal rules of civil discovery, this would
23  have a significant chilling effect on Internet communications and thus on basic First
24  Amendment rights.  Therefore, discovery requests seeking to identify anonymous Internet
25  users must be subjected to careful scrutiny by the courts.

26

As InfoSpace has urged, "[u]nmeritorious attempts to unmask the identities of online speakers . . . have a chilling effect on" Internet speech. The "potential chilling effect imposed by the unmasking of anonymous speakers would diminish if litigants first were required to make a showing in court of their need for the identifying information." "[R]equiring litigants to make such a showing would allow [the Internet] to thrive as a forum for speakers to express their views on topics of public concern." See InfoSpace's memorandum, docket no. 14 at 2. InfoSpace and NoGuano have accordingly urged this Court to "adopt a balancing test requiring litigants to demonstrate . . . that their need for identity information outweighs anonymous online speakers' First Amendment rights[.]" Id.

In the context of a civil subpoena issued pursuant to Fed.R.Civ.P. 45, this Court must determine when and under what circumstances a civil litigant will be permitted to obtain the identity of persons who have exercised their First Amendment right to speak anonymously. There is little in the way of persuasive authority to assist this Court. However, courts that have addressed related issues have used balancing tests to decide when to protect an individual's First Amendment rights.

In Columbia Ins. Co. v. Seescandy.com, the plaintiff was unable to identify the defendants when filing the complaint. That complaint named J. Doe defendants, and alleged, *inter alia,* the infringement of a registered trademark when those defendants registered the "Seescandy.com" domain name. See Seescandy.com, 185 F.R.D. at 576. The J. Doe defendants had engaged in the allegedly tortious conduct entirely online, and anonymously. Id. at 578. The court considered whether to allow discovery to uncover the identity of the defendants so that they might be properly served and subject to the jurisdiction of the court. The court recognized the defendant's "legitimate and valuable right to participate in online forums anonymously or pseudonymously." Id.

Accordingly, the court ruled that four limiting principals would apply to such discovery. The court required that the plaintiff identify the individual with some specificity

ORDER  -8-

1   so the court could determine if they were truly an entity amenable to suit, and that the
2   plaintiff identify all previous steps taken to locate the defendant, justifying the failure to
3   properly serve. Id. at 578-579. The Seescandy.com court imposed two other requirements
4   that have direct relevance here. First, the plaintiff was required to show that the case would
5   withstand a motion to dismiss, "to prevent abuse of this extraordinary application of the
6   discovery process and to insure that plaintiff has standing[.]" Id. at 579-80. Second, the
7   plaintiff was required to file a discovery request justifying the need for the information
8   requested. Id. at 580. Therefore, the court required the plaintiff to demonstrate that the suit,
9   and the resulting discovery sought, was not frivolous, and to demonstrate the need for the
10  identifying information.

11          Similarly, in In re Subpoena Duces Tecum to America Online, Inc., 2000 WL
12  1210372, (Va.Cir.Ct. 2000), the court reviewed a subpoena seeking the identity of certain J.
13  Doe defendants who had allegedly made defamatory statements and disclosed confidential
14  information online. See America Online, Inc., 2000 WL 1210372, *1. The Virginia court
15  recognized the First Amendment right to Internet anonymity, and held that an Internet service
16  provider could assert that right on behalf of its users. See id., *5-6. The court applied a two
17  part test determining whether the subpoena would be enforced. First, the court must be
18  convinced by the pleadings and evidence submitted that "the party requesting the subpoena
19  has a legitimate, good faith basis to contend that it may be the victim of conduct actionable in
20  the jurisdiction where the suit was filed[.]" Id., *8. Second, "the subpoenaed identity
21  information [must be] *centrally needed to advance that claim.*" Id. (emphasis added). In that
22  particular case, because the court concluded that the plaintiff had met these requirements, the
23  discovery was allowed. The Virginia court concluded that the compelling state interest in
24  protecting companies outweighed the limited intrusion on the First Amendment rights of any
25  innocent Internet users. Id.

26

The courts in <u>Seescandy.com</u> and <u>America Online, Inc.</u> applied similar factors. Both required a showing of, at least, a good faith basis for bringing the lawsuit, and both required some showing of the compelling need for the discovery sought. In both cases, the need for the information was especially great because the information sought concerned J. Doe *defendants*. Without the identifying information, the litigation against those defendants could not have continued.

The standard for disclosing the identity of a non-party *witness* must be higher than that articulated in <u>Seescandy.com</u> and <u>America Online, Inc.</u> When the anonymous Internet user is not a party to the case, the litigation can go forward without the disclosure of their identity. Therefore, non-party disclosure is only appropriate in the exceptional case where the compelling need for the discovery sought outweighs the First Amendment rights of the anonymous speaker.

Accordingly, this Court adopts the following standard for evaluating a civil subpoena that seeks the identity of an anonymous Internet user who is not a party to the underlying litigation. The Court will consider four factors in determining whether the subpoena should issue. These are whether: (1) the subpoena seeking the information was issued in good faith and not for any improper purpose, (2) the information sought relates to a core claim or defense, (3) the identifying information is directly and materially relevant to that claim or defense, and (4) information sufficient to establish or to disprove that claim or defense is unavailable from any other source.[5]

This test provides a flexible framework for balancing the First Amendment rights of anonymous speakers with the right of civil litigants to protect their interests through the

---

[5] This Court is aware that many civil subpoenas seeking the identifying information of Internet users may be complied with, and the identifying information disclosed, without notice to the Internet users themselves. This is because some Internet service providers do not notify their users when such a civil subpoena is received. The standard set forth in this Order may guide Internet service providers in determining whether to challenge a specific subpoena on behalf of their users. However, this will provide little solace to Internet users whose Internet service company does not provide them notice when a subpoena is received.

ORDER  -10-

1  litigation discovery process.  The Court shall give weight to each of these factors as the court
2  determines is appropriate under the circumstances of each case.  This Court is mindful that it
3  is imposing a high burden.  "But the First Amendment requires us to be vigilant in making
4  [these] judgments, to guard against undue hindrances to political conversations and the
5  exchange of ideas."  Buckley, 525 U.S. at 192.

6      C.    Analysis of the present motion.

7      In the present case, TMRT seeks information it says will validate its defense that
8  "changes in [TMRT] stock prices were *not* caused by the Defendants but by the illegal
9  actions of individuals who manipulated the [TMRT] stock price using the Silicon Investor
10 message boards."  This Court must evaluate TMRT's stated need for the information in light
11 of the four factors outlined above.

12      1.    Was the subpoena brought in good faith?

13     This Court does not conclude that this subpoena was brought in bad faith or for an
14 improper purpose.  TMRT and its officers and directors are defending against a shareholder
15 derivative class action lawsuit.  They have asserted numerous affirmative defenses, one of
16 which alleges that the defendants did not cause the drop in TMRT's stock value.  TMRT
17 could reasonably believe that the posted messages are relevant to this defense.

18     However, as originally issued the subpoena seeking the identity information was
19 extremely broad.  The subpoena would have required the disclosure of personal e-mails and
20 other personal information that has no relevance to the issues raised in the lawsuit.  This
21 apparent disregard for the privacy and the First Amendment rights of the online users, while
22 not demonstrating bad faith *per se*, weighs against TMRT in balancing the interests here.

23      2.    Does the information sought relate to a core claim or defense?

24     Only when the identifying information is needed to advance core claims or defenses
25 can it be sufficiently material to compromise First Amendment rights.  See Silkwood v. Kerr-
26 McGee Corp., 563 F.2d 433, 438 (10th Cir. 1977)(in order to overcome the journalistic

ORDER  -11-

1   privilege of maintaining confidential sources, a party seeking to identify those sources must

2   demonstrate, *inter alia,* that the "information goes to the heart of the matter[.]")  If the

3   information relates only to a secondary claim or to one of numerous affirmative defenses,

4   then the primary substance of the case can go forward without disturbing the First

5   Amendment rights of the anonymous Internet users.

6           The information sought by TMRT does not relate to a core defense.  Here, the

7   information relates to only one of twenty-seven affirmative defenses raised by the defendant,

8   the defense that "no act or omission of any of the Defendants was the cause in fact or the

9   proximate cause of any injury or damage to the plaintiffs."  This is a generalized assertion of

10  the lack of causation.  Defendants have asserted numerous other affirmative defenses that go

11  more "to the heart of the matter," such as the lack of material misstatements by the

12  defendants, actual disclosure of material facts by the defendants, and the business judgment

13  defense.[6]  Therefore, this factor also weighs in favor of quashing the subpoena.

14              3.    Is the identifying information directly and materially relevant to a core

15                    claim or defense?

16          Even when the claim or defense for which the information is sought is deemed core to

17  the case, the identity of the Internet users must also be materially relevant to that claim or

18  defense.  Under the Federal Rules of Civil Procedure discovery is normally very broad,

19  requiring disclosure of any relevant information that "appears reasonably calculated to lead

20  to the discovery of admissible evidence."  Fed.R.Civ.P. 26(b)(1).  But when First

21  Amendment rights are at stake, a higher threshold of relevancy must be imposed.  Only when

22  the information sought is directly and materially relevant to a core claim or defense can the

23  need for the information outweigh the First Amendment right to speak anonymously.  See

24  Los Angeles Memorial Coliseum Comm'n, 89 F.R.D. at 494 (holding that a party seeking to

25

26          [6] Many of TMRT's affirmative defenses might be viewed by this Court as "non-core,"
    including comparative fault, estoppel, laches, and unclean hands.

    ORDER  -12-

1   enforce a subpoena to disclose non-party journalistic sources must demonstrate that the
2   information is of "certain relevance.")

3       TMRT has failed to demonstrate that the identity of the Internet users is directly and
4   materially relevant to a core defense. These Internet users are not parties to the case and
5   have not been named as defendants as to any claim, cross-claim or third-party claim.
6   Therefore, unlike in Seescandy.com and America Online, Inc., their identity is not needed to
7   allow the litigation to proceed.

8       According to the pleadings, the Internet user known as NoGuano has never posted
9   messages on Silicon Investor's TMRT message board. At oral argument, TMRT's counsel
10  conceded this point but stated that NoGuano's information was sought because he had
11  "communicated" via the Internet with Silicon Investor posters such as Truthseeker. Given
12  that NoGuano admittedly posted no public statements on the TMRT site, there is no basis to
13  conclude that the identity of NoGuano and others similarly situated is directly and materially
14  relevant to TMRT's defense.

15      As to the Internet users such as Truthseeker and Cuemaster who posted messages on
16  the TMRT bulletin board, TMRT has failed to demonstrate that their identities are directly
17  and materially relevant to a core defense. TMRT argues that the Internet postings caused a
18  drop in TMRT's stock price. However, what was said in these postings is a matter of public
19  record, and the identity of the anonymous posters had no effect on investors. If these
20  messages did influence the stock price, they did so without *anyone* knowing the identity of
21  the speakers.

22      TMRT speculates that the users of the InfoSpace website may have been engaged in
23  stock manipulation in violation of federal securities law. TMRT indicates that it intends to
24  compare the names of the InfoSpace users with the names of individuals who traded TMRT
25  stock during the same period to determine whether any illegal stock manipulation occurred.
26  However, TMRT's innuendos of stock manipulation do not suffice to overcome the First

1  Amendment rights of the Internet users. Those rights cannot be nullified by an unsupported
2  allegation of wrongdoing raised by the party seeking the information.

3           4.       Is information sufficient to establish TMRT's defense available from
4                    any other source?

5       TMRT has failed to demonstrate that the information it needs to establish its defense
6  is unavailable from any other source. The chat room messages are archived and are available
7  to anyone to read and print. TMRT obtained copies of some of these messages and
8  submitted them to this Court. TMRT can therefore demonstrate what was said, when it was
9  said, and can compare the timing of those statements with information on fluctuations in the
10 TMRT stock price. The messages are available for use at trial, and TMRT can factually
11 support its defense without encroaching on the First Amendment rights of the Internet users.

12 **CONCLUSION**

13      The Internet is a truly democratic forum for communication. It allows for the free
14 exchange of ideas at an unprecedented speed and scale. For this reason, the constitutional
15 rights of Internet users, including the First Amendment right to speak anonymously, must be
16 carefully safeguarded.

17      Courts should impose a high threshold on subpoena requests that encroach on this
18 right. In order to enforce a civil subpoena seeking the identifying information of a non-party
19 individual who has communicated anonymously over the Internet, the party seeking the
20 information must demonstrate, by a clear showing on the record, that four requirements are
21 met: (1) the subpoena seeking the information was issued in good faith and not for any
22 improper purpose, (2) the information sought relates to a core claim or defense, (3) the
23 identifying information is directly and materially relevant to that claim or defense, and (4)
24 information sufficient to establish or to disprove that claim or defense is unavailable from
25 any other source.

26

ORDER  -14-

1       The Court has weighed these factors in light of the present facts.  TMRT has failed to
2   demonstrate that the identify of these Internet users is directly and materially relevant to a
3   core defense in the underlying securities litigation.  Accordingly, Doe's motion to quash the
4   subpoena is GRANTED.
5       IT IS SO ORDERED.
6       DATED this ___26th___ day of April, 2001.
7
8
9                                   THOMAS S. ZILLY
10                                  UNITED STATES DISTRICT JUDGE
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

ORDER  -15-